REQUESTED BY: Senator Howard Lamb Nebraska State Legislature State Capitol Building Lincoln, Nebraska 68509
Dear Senator Lamb:
In your letter of May 21, 1981, you ask whether, in our opinion, LB 376, as amended, would violate Article I, section25 of the Nebraska Constitution, by discriminating between in-state and out-of-state bank holding companies, and by discriminating between existing out-of-state bank holding companies and bank holding companies coming into existence at a later date. You also ask whether the bill would violate Article XII, section 1 by giving greater rights or privileges to foreign corporations than are given to domestic corporations.
In an opinion of this office dated May 21, 1981, Opinion No. 106, we considered whether the bill would deny equal protection, in violation of the Fourteenth Amendment, and whether it would constitute special legislation, in violation of Article III, section 18 of our Constitution, and concluded that the bill could be defended against those attacks. The constitutional provisions you inquire about are somewhat different, but we conclude that much of what we said in the former opinion is also applicable to the provisions you inquire about.
Neb.Rev.Stat. §§ 8-901 to 8-904 (Reissue 1977) make it unlawful for any action to be taken after March 12, 1963, which results in a company's becoming a bank holding company, which is defined as a company which owns or controls two or more banks. These sections also make it unlawful for a bank holding company to acquire ownership or control of 25 percent or more of the voting shares of any bank operating in the state. Neb.Rev.Stat. §§ 8-1201 to 8-1207 (Reissue 1977) provide for registration and regulation of one bank holding company, meaning, as the name implies, a holding company which owns or controls only one bank.
LB 376, as amended, would amend § 8-903, to permit (1) a bank holding company or a company owning only one bank which is not a bank holding company as defined in § 8-902, (2) a one bank holding company as defined in § 8-1202, or (3) an out-of-state bank holding company as defined in12 U.S.C. § 1842(d) which on December 31, 1978 owned at least two banks in this state, to acquire up to a total of nine banks each in this state, according to a prescribed schedule. Existing out-of-state bank holding companies could own or control not more than five banks until January 1, 1983. Other bank holding companies could own or control not more than three banks before that date. After that date any bank holding company can acquire another bank each year up to a total of nine. An existing out-of-state bank holding company can acquire its nine by 1986, but domestic companies cannot acquire nine before 1988.
Your first question is whether Article I, section 25 of our Constitution is violated. This section provides in part: `There shall be no discrimination between citizens of the United States in respect to the acquisition, ownership, possession, enjoyment or descent of property.' This, we think, must be construed to mean `unreasonable discrimination.' Otherwise, even §§ 8-901 to 8-904 would be vulnerable to attack. A corporation now owning a bank which wished to acquire another would say it is discriminated against, because another corporation, which owned no bank, could acquire the bank in question, while the first corporation could not. We are assuming, but not deciding, that a corporation is a `citizen,' as contemplated by Article I, section 25.
The point is that the banking business is affected with the public interest, and is subject to strict regulation. For whatever reason, the Legislature has concluded that the concentration of control of banks in a few hands should be regulated. Reasonable regulation of ownership of banks is not, therefore, forbidden by Article I, section 25, in our opinion.
Therefore, the question becomes essentially the same as we considered in our former opinion, reasonableness. We reached the conclusion that, given the historical facts, the classification was reasonable. On the same basis we conclude that reasonable restrictions on the ownership of banks would not violate Article I, section 25, even though such restrictions forbade some corporations to acquire stock in banks, while permitting other corporations to acquire such stock.
In our May 21st opinion we pointed out that there is presently only one bank holding company, as defined in 8-902, and that it was an out-of-state banking holding company, which owns five banks. The constitutional validity of LB 376 must be judged in light of this historical fact. We cited Iowa Independent Bankers v. Board of Governors of theFederal Reserve System, 511 F.2d 1288 (D.C. Cir. 1975) for the proposition that the Legislature could take the actual facts into consideration, and need not `draw its statutes to encompass hypothetical situations that could never bear the fruits of reality.'
If we were to look only at the bill, with no knowledge of the factual situation, it probably would be subject to attack on several constitutional grounds, because it would appear to violate Article III, section 18, by creating unreasonable classification, and probably also Article I, section 25. On its face, it appears to give greater rights and privileges to a foreign corporation than are given to domestic corporations of a similar character, in violation of Article XII, section 1.
However, it is obvious that the drafters of the bill have simply taken into account the fact that there is now in existence only one bank holding company, as defined in 8-902, an out-of-state corporation, which owns five banks. Other bank holding companies, as defined in § 8-1201, holding one bank, may acquire one new bank per year, up to a maximum of nine. The present company, holding five, cannot acquire any more until January 1, 1983, when it, also, can start acquiring one more per year. Since it starts with five, it can acquire its ninth bank sooner than those which start with one or none.
To make it more clear, suppose the bill simply provided that every bank holding company could acquire one additional bank each year, until it reached a total of nine. That would appear to be totally nondiscriminatory, and yet, under such a provision the company now owning five banks could acquire nine by 1984, instead of 1986, as LB 376 provides. In effect, this is what LB 376 does, except that it postpones until 1983 the acquisition of additional banks by the one now owning five banks.
We therefore conclude that the bill can be defended against the constitutional attacks you inquire about.
Very truly yours, PAUL L. DOUGLAS Attorney General Ralph H. Gillan Assistant Attorney General